J-S45013-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: Z.T. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.H.-T. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 562 MDA 2018 |

Appeal from the Decree Entered March 12, 2018
In the Court of Common Pleas of Cumberland County
Orphans' Court at No(s):  10 Adoptions 2018

BEFORE:   PANELLA, J., OTT, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J.:                    **FILED AUGUST 07, 2018**

J.H.-T. ("Father") appeals from the decree entered March 12, 2018, which granted the petition of the Cumberland County Children and Youth Services Agency ("the Agency") and terminated his parental rights to Z.T. (born November 2016), his daughter, pursuant to § 2511(a)(2), (5), and (b) of the Adoption Act.[1] Additionally, Father's counsel, Joseph L. Hitchings,

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Father did not challenge the goal change to adoption in his notice of appeal and does not discuss the goal change in his brief. Accordingly, he has waived this claim on appeal. **See Krebs v. United Refining Co. of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006). **See also** Pa.R.A.P. 2101; Pa.R.A.P. 2119(b)-(c).

We further note that it is unclear from the record whether the court changed Z.T.'s permanency goal to adoption pursuant to 42 Pa.C.S. § 6351. Although the trial court indicates that the March 9, 2018 hearing was convened for both the goal change petition and the termination petition, the actual decree as

Esquire, seeks to withdraw his representation of Father pursuant to *Anders v. California*, 386 U.S 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). We affirm and grant counsel's petition to withdraw.

We adopt the trial court's thorough recitation of the facts and procedural history in this case. *See* Trial Court Opinion ("TCO"), 5/4/18, at 1-10. *See also* N.T., 3/9/18, at 6-74. Briefly, however, we note the following. The Agency has been involved with the family since 2014. Mother's parental rights to three other biological children, not subject to this appeal, were terminated in 2015. Mother has a long history of drug and alcohol abuse. Father, likewise, has a long history of drug and alcohol abuse, arrests and incarcerations, and mental health concerns. By his own admission, Father was diagnosed with bipolar disorder "years" ago, but has not been compliant with treatment or medication until recently.[2]

Z.T. was born in November 2016. In May 2017, the Agency received a report that Father had committed an act of domestic violence against Mother; he was arrested and charged with simple assault, strangulation, and

_____

entered at both the hearing and on the record concerns only termination. *See* N.T., 3/9/18, at 76; Decree, 3/12/18. The record indicates further hearings were to be convened in August 2018, but offers no information as to the subject of said hearings. *See* N.T., 3/9/18, at 76. Regardless, as Father does not challenge the goal change, this discrepancy does not affect our analysis.

[2] The record is unclear whether the Agency had been involved with Father prior to Z.T.'s dependency matter.

harassment.[3] At that time, Mother tested positive for drugs,[4] and Z.T. was removed from their care and placed with her maternal aunt. Z.T. has lived with her aunt since her removal from Mother's care, and is bonded with both her aunt and her cousins. In May 2017, the court adjudicated Z.T. dependent. In December 2017, the Agency filed a petition to schedule a goal change hearing. In February 2018, the Agency filed a petition seeking to involuntarily terminate Father's parental rights and change Z.T.'s permanency goal to adoption.

In March 2018, the court convened a hearing on the termination and goal change petitions. The Agency presented the testimony of Debra Zervanos and Linda Hempt, caseworkers for the Agency, and M.L., Mother's sister and Z.T.'s foster parent. Mother and Father, both represented by counsel, testified on their own behalf. Z.T. was represented by Marylou Matas, Esquire, GAL, and Damian DeStefano, Esquire, legal counsel.[5] Following the conclusion of

_____

[3] As of the time of the termination hearing, Father's criminal matter had not yet been disposed.

[4] In a drug screen, Mother tested positive for cocaine. The Agency presented additional testimony at the hearing indicating that Mother was also using heroin.

[5] Although the notes of testimony indicate that Attorney DeStefano was present at the hearing, he did not participate in cross-examination, present his own witnesses on Z.T.'s behalf, or convey Z.T.'s preferences. However, because the record does not reflect that, at the time of the hearing, Z.T. was capable of informing the court of her preferences, we will not remand this matter. *See In re K.J.H.*, 180 A.3d 411, 413-414 (Pa. Super. 2018) (holding that this Court must raise *sua sponte* the issue of child's right to counsel). *Cf*.

DHS' case in chief, the court granted the petition pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), and (b), and entered a decree terminating Father's parental rights.

Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Rule Pa.R.A.P. 1925(a)(2)(i) and (b).

Father's counsel, Joseph L. Hitchings, Esquire, filed a petition for leave to withdraw as counsel and an *Anders* brief, which we must address before reviewing the merits of this appeal. Attorney Hitchings has complied with the mandated procedure for withdrawing as counsel. *See Santiago*, 978 A.2d at 361 (articulating *Anders* requirements); *Commonwealth v. Daniels*, 999 A.2d 590, 594 (Pa. Super. 2010) (providing that counsel must inform client by letter of rights to proceed once counsel moves to withdraw and append a copy of the letter to the petition). Father has not filed a response to counsel's petition to withdraw.

We next proceed to review the issues outlined in the *Anders* brief. In addition, we must "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa. Super. 2015) (footnote omitted).

Counsel's *Anders* brief presents the following issues:

---

*In re Adoption of T.M.L.M.*, 184 A.3d 585, 587-591 (Pa. Super. 2018) (vacating and remanding for further proceedings where the attorney admitted she did not interview the six-year-old child to ascertain the child's preferences).

1. Whether the [trial court] abused its discretion and committed an error of law when it found, despite a lack of clear and convincing evidence, that sufficient grounds existed for a termination of [Father's] parental rights under Section 2511(a) of the Adoption Act, 23 [Pa C.S.] § 2511(a).

2. Whether the [trial court] abused its discretion and committed an error of law in determining it would be in the child's best interest to have parental rights terminated, when it failed to primarily consider the child's developmental, physical and emotional needs and welfare, thus contravening Section 2511(b) of the Adoption Act, 23 [Pa.C.S.] § 2511(b).

**See Anders** Brief, at 4.[6]  Father has not filed a response to the **Anders** brief, nor has he retained new counsel.

Father avers that the trial court abused its discretion and committed an error of law when it found sufficient grounds existed to terminate Father's parental rights under § 2511(a)(2), (5) and (b).

In matters involving involuntary termination of parental rights, our standard of review is as follows:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

_____

[6] Additionally, neither counsel for Z.T., the GAL, nor counsel for the Agency have filed briefs in this appeal.

> [T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act. The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *See In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*) (citation omitted).

We may affirm the court's decision regarding the termination of parental rights with regard to any *one* subsection of § 2511(a). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Although the trial court focused its analysis on § 2511(a)(2),(5) and (b), we will discuss only subsections (a)(2) and (b).

Subsection (a)(2) provides as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .

23 Pa.C.S.A. § 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002)).

A parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *See In re A.L.D.*, 797 A.2d at 337. A parent's vow to cooperate, after a long period of

- 7 -

uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *See id*., at 340.

And with respect to incarceration, our Supreme Court has stated:

[W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2).

*In re Adoption of S.P.*, 47 A.3d at 830-31.

Father first contends that he did not abuse, neglect, or refuse to provide essential care to Z.T. Father claims that prior to incarceration, he kept his child safe, and that while incarcerated, he attempted to meet his plan goals by attending weekly mental health counseling, parenting classes, and completing a personal development class. He argues that the Agency did not present evidence that the situation leading to placement would not be rectified by Father upon his release, and that incarceration alone is not a sufficient ground for termination.

As the trial court aptly notes, Z.T. was removed from the home due to the parents' drug use and Father's incarceration on domestic violence charges. *See* TCO at 13. There were further concerns that Father was not properly treating his mental health. *See id*. It was Father's actions that ultimately led to the removal of Z.T., and despite minimal progression in a structured environment—incarceration—Father presented no evidence to show that he

can provide long-term stability for Z.T. upon his release. *See id*., at 13-14. The trial court particularly noted that Father had made no efforts toward reunification prior to his incarceration, and did not take meaningful steps to address the domestic violence in the home, and resisted taking personal responsibility for it. *See id*., at 14. Further, Father did not make any realistic efforts to procure a home, employment, or other resources to accommodate a child. *See id*.

Attorney Hitchings agrees that the trial court appropriately reviewed Father's compliance with his objectives and the feasibility of Father meeting his goals in the future, and appropriate determined that Father made little effort to remain in contact with his child, little progress towards his goals, and has not secured employment or a permanent residence.

Accordingly, the trial court properly found by competent, clear, and convincing evidence that Father's parental rights could be terminated pursuant to subsection (a)(2), as he suffered a continued incapacity that caused Z.T. to be without essential parental care, and that the causes were not remedied by Father.

We next determine whether termination was proper under § 2511(b). This Court has stated that the focus in terminating parental rights under subsection (a) is on the parent, but it is on the child pursuant to subsection (b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. … [T]he determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations, brackets and quotation marks omitted; brackets added).

"[I]n cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted). When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (citations omitted).

A parent's abuse and neglect are likewise a relevant part of this analysis. *See In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). And "a parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and

fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

Here, the trial court appropriately found that it was in Z.T.'s best interests for Father's rights to be terminated so that she could be adopted. The one-and-a-half-year-old Z.T. had already been in care for ten months at the time of the hearing with no further progress towards reunification. *See* TCO at 16. She had seen or spoken to Father only twice in those ten months. *See id*. Accordingly, there was no bond between them, as opposed to the healthy bond Z.T. shares with her foster parent, a biological aunt. *See id*. In her pre-adoptive home, Z.T. has "liberal access to her immediate and extended biological family," who appropriately care for her needs and welfare. *Id*. By contrast, Father has not shown that he has alleviated the concerns of his significant history of drug abuse, domestic violence, mental health issues, and criminal activity. *See id*., at 16-17. Attorney Hitchings agrees with this analysis.

In short, we agree with Attorney Hitchings that Father's issues are frivolous. We have independently reviewed the record and find no other issues of arguable merit that he could pursue on appeal. Accordingly, we grant counsel's petition to withdraw and conclude that the clear and convincing evidence of record supports the termination of Father's parental rights under § 2511(a)(2) and (b). Accordingly, we affirm the decree.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/7/2018